**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Action No.: 11-99 (JLL) |
| Plaintiffs, | |
| v. | **AMENDED OPINION** |
| ANDREW COX, | |
| Defendant. | |

**LINARES**, District Judge.

The Court issues this Amended Opinion to correctly reflect the content of Magistrate Judge Schwartz's Continuance Order as issued on this docket at Docket Entry No. 6. That Order included handwritten findings clearly supplementing as an additional basis for her "ends-of-justice" determination that "the continuance will provide defendant an opportunity to secure counsel and confer with counsel before the case is presented to the grand jury." See infra pp. 14-15.

This matter comes before the Court by way of Defendant's Omnibus Motion [Docket Entry No. 40] seeking to: 1) dismiss the indictment for violations of the Speedy Trial Act and issue a ruling on the "gilded indictment"; 2) dismiss based on an invalid and unconstitutional warrant; 3) suppress search and seizure of items found pursuant to the search warrant because the warrant lacked probable cause; 4) dismiss for lack of venue; 5) bar the Government evidence under Federal Rules of Evidence 803(6) and 902(11); 6) request in camera review of consent forms for use of the Cooperating Witness ("CW")'s e-mail account and warrants issued

regarding it; and 7) request production of Grand Jury minutes.   In its Opposition to Defendant's Omnibus Motion, the Government also filed a Cross-Motion for Reciprocal Discovery [Docket Entry 43].  A previous Order by this Court issued subsequent to oral argument on September 26, 2011 denied the Government's motion for reciprocal discovery as moot, and resolved the final two issues of the Defendant's motion by ordering the Government to provide any *Jencks* material in its possession to the Defendant in a timely fashion as well as to review the Grand Jury Transcript and cooperating witness materials requested by Defendant for any *Giglio* or *Brady* materials [Docket Entry No. 56].  Any such materials were ordered to either be turned over to the Defendant or submitted to the court for an in camera review [Id.].  The Court will thus only be considering in this Opinion and accompanying Order the first five claims filed in Defendant's Omnibus Motion.

## I. BACKGROUND

On December 1, 2010, a criminal complaint was filed in the District Court of New Jersey, charging Defendant Andrew Cox with one count of knowingly distributing child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A) on or about October 4, 2010, and incorrectly stating that the CW allegedly received a package from Defendant at a New Jersey rather than a Pennsylvania address.  An arrest warrant was also filed on December 1, 2010, in the District of New Jersey, and Defendant was arrested on December 2, 2010 in Columbus, Ohio.  Defendant appeared before Magistrate Judge Preston Deavers of the United States Court for the Southern District of Ohio on December 3, 2010, where he waived his rights to an identity hearing and a preliminary hearing.  Pursuant to the Government's motion to detain Defendant pending transfer to the District of New Jersey, and upon hearing argument from counsel, Magistrate Judge Deavers

ordered Defendant detained pending said transfer. Gordon Hobson, Esq., the Assistant Federal

Public Defender in Ohio, was appointed for the purposes of representing Defendant at his initial

appearance, and on or about December 7, 2010, Mr. Hobson e-mailed the Assistant U.S.

Attorney in the Southern District of Ohio, following Defendant's request, to negotiate a potential

cooperation agreement. The Assistant U.S. Attorney from the District of New Jersey responded

to Mr. Hobson on or about December 10, 2010, indicating that the Government would be

amenable to meeting with Defendant upon his arrival in the District.

Between December 16, 2010 and January 4, 2011, Defendant was moved through six

distinct facilities before being brought before the District of New Jersey on January 4, 2011.

Specifically, he was moved from the Butler County Jail in Ohio through Cincinnati, Ohio and

Blue Grass, Indiana to arrive at the Federal Transfer Center in Oklahoma City, Oklahoma on

December 16, 2010. He was moved from Oklahoma City to Harrisburg, Pennsylvania, and from

Harrisburg to Philadelphia, Pennsylvania on December 20, 2010. On December 21, 2010,

Defendant was transferred from Philadelphia to Brooklyn, New York, where he remained until

his appearance on January 5, 2010 before the District of New Jersey (Def.'s Omnibus Motion,

Ex. P, "Form 106").

Dennis Maitland, the father of Defendant's fiancée Shannon Maitland, alleges that he

called the office of United States Magistrate Judge Patty Schwartz four times between December

20, 2010 and December 22, 2010 to bring Defendant's case to the Magistrate's attention. Mr.

Maitland further indicates that on December 20, 2010, he spoke with a member of Magistrate

Judge Schwartz's staff, and informed her that Defendant was in fact in Philadelphia and asked if

he was scheduled on the docket. The staff member allegedly responded that Defendant was not

on the docket as of that point and requested that Mr. Maitland call back after 11:00am the next

day. (Def.'s Omnibus Mot. Br., "Certification of Dennis E. Maitland," Ex. J, at ¶ 4; "Dennis Maitland Phone Records," Ex. K). On December 21, 2010, Mr. Maitland asserts that thereafter he called after 11:00am and spoke with Magistrate Judge Schwartz's judicial assistant. The assistant stated that she did not know if Defendant was on the docket, and would have another staff member return his call. (Id., at ¶ 5; Ex. K). The staff member returned Mr. Maitland's call later that day, and Mr. Maitland informed her that Defendant was then in Brooklyn. (Id.). Mr. Maitland claims that he confirmed with her that Defendant was near Newark, and asked if Defendant was on the docket, but was informed that he was not. (Id.). On December 22, 2010, Mr. Maitland called a member of Magistrate Judge Schwartz's staff and asked again if Defendant was on the docket, and was again informed that he was not. Mr. Maitland asked the staff member whether the court would be in session on December 23 and 24 before Christmas, and she confirmed that the court would be in session on those days. (Id.. at ¶ 6; Ex. K).

On or about December 23, 2010, the Government contacted the United States Marshal Service ("USMS") in the District of New Jersey, and were advised that: (1) the Defendant had not arrived in the District of New Jersey; and (2) Defendant's transfer was not scheduled until the next airlift for the District of New Jersey after the first of the year. (Gov't Opp'n to Def.'s Omnibus Mot. Br., at 4; Jerry Sanseverino, Deputy United States Marshal for the USMS, Affidavit ("Sanseverino Affidavit"), at 3 [Docket Entry No. 54]). On the same day, Assistant U.S. Attorney Jane Yoon telephoned Gordon Hobson, Esq. to notify him of the status of Defendant's transfer and to seek Defendant's counsel's consent for a continuance due to transportation problems. Mr. Hobson informed her that while he represented Defendant at his initial appearance in Ohio, he no longer represented him. In a Telephone Conference held by this Court on October 6, 2011, Mr. Hobson indicated to this Court that, during the same

conversation with U.S. Attorney Yoon, he refused to consent to a waiver of the thirty-day clock

between arrest and indictment to which Defendant was entitled under the Speedy Trial Act.

[Telephone Conference with Gordon Hobson, AFPD, Ohio Office of the Federal Public

Defender on Oct. 6, 2011; Docket Entry No. 58]. In that Telephone Conference, Mr. Hobson

also stated that while he notified the U.S. Attorney that he no longer represented the Defendant,

he did not recall whether or not he remained attorney of record as of the date of the U.S.

Attorney's call. Thereafter, the Government submitted a request to Magistrate Judge Schwartz

for a thirty-day continuance, providing a courtesy copy to Mr. Hobson (Gov't Opp'n to Def.'s

Omnibus Mot. Br., Ex. 6). On December 23, 2010, Magistrate Judge Schwartz granted a

continuance pursuant to 18 U.S.C. § 3161(h)(7) in the interests of justice, based on the

Government's representations to Judge Schwartz that the "defendant has not yet been transferred

to the District of New Jersey and [that] the U.S. Marshals [had] advised that the defendant [could

not] be transported by air to this district until the week of January 3, 2011 at the earliest," and

that "the Government contacted Mr. Hobson, who advised that he no longer represented Cox."

(Id.). The Continuance Order notes that "defendant has not yet appeared in this district, no

counsel has been appointed to represent the defendant, and no counsel has informed the

Government or this Court that they have been retained to represent the defendant in connection

with these proceedings." (Id.). The continuance therefore ordered the exclusion of the period

from December 23, 2010 through January 22, 2011 for the purposes of computing time under the

Speedy Trial Act.

On December 30, 2010, the Government filed a Superseding Criminal Complaint,

charging Defendant with knowingly distributing child pornography in violation of 18 U.S.C. §

2252A(a)(2)(A) and 18 U.S.C. §2 from in or around April 2010 through in or around October

5

2010. The supporting affidavit to the complaint lists distributions on May 10, 2010, based on the CW's receipt of an e-mail from "armyltcox@yahoo.com" indicating that DVDs requested from the CW would be shipped on the same date, and providing the United States Postal Service 20-digit tracking number associated with the shipment. The supporting affidavit also detailed circumstances surrounding a later alleged distribution on September 29, 2010 received by the CW on October 4, 2010, and incorrectly listed the address of the CW's receipt of a package alleged to be from Defendant as a New Jersey rather than a Pennsylvania address.

On January 3, 2011, the Government contacted the USMS and was advised that Defendant was in the Metropolitan Detention Center in Brooklyn, and would be brought before the District of New Jersey on January 5, 2011. Defendant was arrested on January 5, 2011 on the single count charged in the Government's Superseding Complaint, and he made his initial appearance at the District of New Jersey before Magistrate Judge Schwartz. Defendant was appointed Assistant Federal Public Defender K. Anthony Thomas as his counsel, and on January 7, 2011, pursuant to a detention hearing, Defendant was ordered released into the custody of Dennis Maitland, pursuant to certain conditions of release. This release occurred thirty-six (36) days after his December 2, 2010 arrest.

On February 9, 2011, a Grand Jury returned an Indictment charging Defendant with one count of knowingly distributing child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A) on or about May 10, 2010. The Indictment did not charge Defendant with the distribution that was the subject matter of the original complaint for which he was arrested on December 2, 2010 pertaining to the October 4, 2010 distribution. On March 16, 2011, Defendant was arraigned before Magistrate Judge Schwartz and a bail revocation hearing was held where the conditions of Defendant's release were modified. On March 29, 2011, pursuant to a joint application of the

Government and Defendant, a scheduling and continuance order was entered, excluding the period of April 25, 2011 to August 22, 2011 for the purposes of computing time under the Speedy Trial Act. On April 15, 2011, the bail revocation hearing was continued before Magistrate Judge Schwartz and an order of revocation was entered, ordering Defendant's detention pending trial. On June 8, 2011, a bond hearing was held before Magistrate Judge Schwartz pursuant to Defendant's application for a bail review, and an order affirming the April 15, 2011 bail revocation order was entered.

On June 15, 2011, a Grand Jury returned a Superseding Indictment charging Defendant with six counts of knowingly distributing child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A) on May 10, 2010; May 14, 2010; June 9, 2010; June 16, 2010; June 25, 2010; and June 29, 2010. The Superseding Indictment did not include the charge from the original Criminal Complaint that Defendant knowingly distributed child pornography on October 4, 2010. On July 7, 2011, Defendant was arraigned before this Court. On July 12, 2011, this Court granted a continuance, excluding the period from July 8, 2011 through September 26, 2011 for the purposes of computing time under the Speedy Trial Act. On August 1, 2011, this Court confirmed Magistrate Judge Schwartz's Revocation of his Conditions of Release, denying Defendant's motion for reconsideration of his bail revocation.

## II. DISCUSSION

### 1. Violation of the Speedy Trial Act

The Sixth Amendment to the United States Constitution guarantees that, "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. The Speedy Trial Act, 18 U.S.C.S. §§ 3161-3174, requires that the Government issue an

indictment within thirty days of a defendant's arrest. 18 U.S.C.S. § 3161(b). If an indictment is not filed within that time, the complaint must be dismissed under 18 U.S.C.S. § 3162(a)(1). Section 3162(a)(1) leaves to the court's discretion whether the dismissal should be granted with or without prejudice, and sets forth factors for the court to consider in guiding its decision: 1) the seriousness of the offense; 2) the facts and circumstances of the case which led to the dismissal; and 3) the impact of a reprosecution on the administration of the Speedy Trial Act and on the administration of justice.

Defendant argues that, since he was indicted more than thirty days following his arrest, all six counts of the Superseding Indictment must be dismissed pursuant to the Speedy Trial Act. Defendant argues that all six counts in the Superseding Indictment are identical to those set forth in the complaint. Defendant does not specify whether he is referring to the Criminal Complaint filed on December 1, 2010 or the Superseding Criminal Complaint filed on December 30, 2010. The Government argues that the Speedy Trial clock may only apply to the original December 1, 2010 complaint, where Defendant was charged with distribution of child pornography on or about October 4, 2010. The Government also asserts that, since a continuance order was granted excluding days from December 23, 2010 through January 22, 2011, and since Defendant was indicted on February 9, 2011, there was no violation of the requisite thirty-day period to indict.

A.  Counts in the Indictment Subject to Dismissal

A District Court may only dismiss those charges in an indictment that were included in the complaint, not other charges for which the defendant was indicted. United States v. Watkins, 339 F.3d 167, 169 (3d Cir. 2003); see also United States v. Oliver, 238 F.3d 471, 473 (3d Cir. 2001)("[T]he Speedy Trial Act requires the dismissal of only those charges that were made in the original complaint that triggered the thirty-day time period"); United States v. Mosquera, 95 F.3d

1012, 1013 (11th Cir. 1996)("The Speedy Trial Act does not guarantee that an arrested

individual indicted within thirty days of his arrest must, in that thirty-day period, be indicted for

every crime known to the government, failing which he may never be charged"); United States v.

Giwa, 831 F.2d 538, 541 (5th Cir. 1987) ("every circuit . . . has adopted a narrow interpretation

of section 3162(a)(1), holding that if the Government fails to indict a defendant within thirty

days of arrest, the Act requires dismissal of only the offense or offenses charged in the original

complaint"); United States v. Miller, 23 F.3d 194, 199 (8th Cir. 1994)("A defendant's arrest on

one charge does not necessarily trigger the right to a speedy trial on another charge filed after his

arrest"); United States v. Derose, 74 F.3d 1177, 1182-83 (11th Cir. 1996); United States v.

Antonio, 705 F.2d 1483, 1486 (9th Cir. 1983). In United States v. Archer, a case similar to the

one before this Court, a defendant was arrested based on a complaint charging one count of

knowing and intentional possession with intent to distribute over 50 grams of cocaine, but was

indicted seventy-five days later on six counts of criminal activity, including four separate counts

of distributing cocaine on different dates, one count of possession with intent to distribute

cocaine, and one firearm charge. 984 F. Supp. 321, 322 (E.D. Pa. 1997). The Eastern District of

Pennsylvania held that only one count of distribution from the six-count indictment was subject

to dismissal when the Speedy Trial Act was violated since it was the only count based on

conduct that served as the basis of the original complaint. Id. at 324-25.

  The only exception to this rule on dismissal is the "gilding exception." Under the

"gilding exception," "subsequent prosecution may be barred if it is based on an indictment which

merely 'gilds' an earlier charge. . . ." Watkins, 339 F.3d at 176, citing United States v.

Napolitano, 761 F.2d 135, 138 (2d Cir. 1985). While the Third Circuit has yet to definitively

endorse the "gilding exception," it adopted the "same-elements" test as a means of assessing

whether or not uncharged offenses are "gildings" of a charged offense, rejected the "same-transaction" and "same-proofs" tests. Id. at 176-78. Under the "same-elements" test, "different charges will be construed as the same if they contain the same elements." Id. at 176.

The Court must now determine: 1) which of the two filed criminal complaints triggered the thirty-day period in which the Government was required to indict the Defendant under the Speedy Trial Act, and which charges in the governing Superseding Indictment found in the triggering complaint are subject to dismissal should a violation of the Speedy Trial Act be found; and 2) whether any charges not subject to dismissal merely "gild" the charge in the triggering complaint.

### 1) The "Triggering" Complaint and Charges Subject to Dismissal in the Superseding Indictment

In determining which charges are included in the complaint, a complaint and affidavit are to be read in conjunction with one another. See Fed. R. Crim. P. 4(a) ("If the complaint or one or more affidavits filed with the complaint establish probable cause to believe that an offense has been committed and that the defendant committed it, the judge must issue an arrest warrant to an officer authorized to execute it."). This Court accordingly reads the filed criminal complaints in conjunction with the affidavits attached thereto. The first Criminal Complaint against Defendant was filed in the District of New Jersey on December 1, 2010, and contained this statement of the offense:

> On or about October 4, 2010, in the District of New Jersey, and elsewhere, defendant ANDREW COX: did knowingly distribute child pornography, as defined in Title 18, United States Code, Section 2256(8)(A), that has been mailed, and using any means and facility of interstate and foreign commerce shipped and transported in and affecting interstate and foreign commerce by any means, including by computer, in violation of Title 18, United States Code, Section 2252A(a)(2)(A).

The sworn affidavit by Postal Inspector Eduardo Gonzalez accompanying this complaint details Defendant's activities beginning with an original communication between the Defendant and the CW on September 28, 2010, and ending with the October 4, 2010 receipt of a package by inspectors allegedly sent by Defendant. An arrest warrant was issued on the basis of this complaint on December 1, 2010, amended on December 2, 2010, and Defendant appeared before Magistrate Judge Deavers on December 3, 2010. On December 4, 2010, the clock began running for Defendant to be indicted on this first complaint. Neither the original Indictment nor the Superseding Indictment include an October 4, 2010 charge, and neither reference the activities surrounding the specific alleged distribution on which said charge is based. Accordingly, the October 4, 2010 charge will not be considered as subject to dismissal as there is no charge to be dismissed. The Speedy Trial Act is inapplicable to an indictment charging a defendant with a different offense from that charged in the original complaint. There can therefore be no violation of the Speedy Trial Act if the December 1, 2010 complaint is the triggering complaint.

The second, Superseding Criminal Complaint against Defendant was filed in the District of New Jersey on December 30, 2010, and has the following statement of the offense:

> From in or around April 2010 through in or around October 2010, in the District of New Jersey, and elsewhere, defendant ANDREW COX: did knowingly distribute child pornography, as defined in Title 18, United States Code, Section 2256(8)(A), that had been mailed, and using any means and facility of interstate and foreign commerce shipped and transported in and affecting interstate and foreign commerce by any means, including computer, in violation of Title 18 United States Code, Section 2252A(a)(2)(A) and Title 18, United States Code, Section 2.

The accompanying affidavit by Postal Inspector Eduardo Gonzalez includes the same details surrounding the October 4, 2010 distribution as the original complaint's affidavit, but adds Defendant's alleged activities on April 30, 2010, May 8, 2010, May 10, 2010 and May 25, 2010. Specifically, the affidavit states that on or about May 10, 2010, the CW received an e-mail from

"armyltcox@yahoo.com" indicated that requested DVDs would be shipped on that date, and providing a United States Postal Service 20-digit tracking number associated with that shipment. Inspectors recovered the package from the CW's residence in New Jersey in July 2010. On January 5, 2011, Defendant was arrested on the basis of the Superseding Criminal Complaint, and appeared before Magistrate Judge Schwartz on the same date. On January 6, 2011, the clock began running for Defendant to be indicted on the Superseding Complaint.

The return of the Indictment on February 9, 2011 stopped the clock for the purposes of computing a Speedy Trial Act violation. That Indictment charges,

> On or about May 10, 2010, in the District of New Jersey, defendant ANDREW COX did knowingly distribute child pornography, as defined in Title 18, United States Code, Section 2256(8), that was mailed, and using a means and facility of interstate and foreign commerce, shipped and transported in and affecting interstate commerce and foreign commerce by any means, including by computer. In violation of Title 18, United States Code, Section 2252A(a)(2)(A) and Section 2.

On June 15, 2011, a Superseding Indictment was returned including one count of unlawfully distributing child pornography on or about May 10, 2010, but also including five additional counts of unlawful distribution of child pornography on May 14, 2010, June 9, 2010, June 16, 2010, June 25, 2010, and June 29, 2010. Neither complaint includes the five additional charges of unlawful distribution, nor do they reference the activities surrounding the alleged distributions on the named dates following May 10, 2010. Therefore, since the five additional charges are neither charged in the original Criminal Complaint nor in the Superseding Complaint, the Speedy Trial Act is inapplicable to them and they are not subject to dismissal.

The only applicable complaint in which the May 10, 2010 charge can be found is the December 30, 2010 Superseding Complaint. The clock began to run on January 6, 2011 to indict Defendant on that complaint, and since the Indictment was only returned on February 9, 2011, the Government exceeded its thirty-day limit to indict by four days unless any exclusions under

18 U.S.C. § 3161(h) are applicable.  If the December 23, 2010 Continuance Order is valid, the dates from January 6, 2011 to January 22, 2011 are excludable from the speedy trial clock under 18 U.S.C. § 3161(h)(7), and the Government would not be in violation of the Speedy Trial Act as it would have returned an indictment within eighteen countable days from Defendant's arrest.

Defendant argues that the December 23rd Continuance Order is invalid since it was filed *ex parte*, and when it was requested and obtained, the Government knew the reason given for the requested continuance—transportation problems—was factually fraudulent and baseless.  The Government argues that the continuance was valid since the Continuance Order set forth sufficient reasons on the record to justify an "ends-of-justice" determination, and "the ends of justice served by taking such action outweigh[ed] the best interest of the public and the defendant in a speedy trial" under 18 U.S.C. § 3161(h)(7)(A).

The standard of review of a decision to grant a continuance is abuse of discretion.  United States v. Stradford, 394 Fed. Appx. 923, 925 (3d Cir. 2011).  The Speedy Trial Act requires that "when a . . . court grants an ends-of-justice continuance, it must '[s]et forth, in the record of the case, . . . its reasons' for finding that the ends of justice are served and they outweigh other interests."  United States v. Zedner, 547 U.S. 489, 506-07 (2006)(citing 18 U.S.C. § 3161(h)(8)(A)).

In seeking the December 23, 2010 continuance, the Government represented that they were seeking a continuance only based on the need for additional time to transport the Defendant:

> Given the additional time that will be necessary to transport the defendant Andrew Cox . . . . from the Southern District of Ohio to this district, the interests of justice served by granting the requested continuance outweigh the best interest of the public and the defendant in a speedy trial.
> . . .

> The interest of justice served by granting a continuance from December 23, 2010 through
> January 22, 2011 to allow additional time to transport the defendant to this district
> outweigh the interest of the public and the defendant in a speedy trial.

No mention was made by the Government in its letter request to Magistrate Judge Schwartz of

the need to allow time for the Defendant to obtain counsel as per 18 U.S.C. § 3161(h)(7)(B)(iv),

the only mention of Defendant's counsel in the Government's submission to Magistrate Judge

Schwartz is in a footnote stating that "the Government contacted Mr. Hobson, who advised that

he no longer represented COX." (Gov't Opp'n to Def.'s Omnibus Mot., Ex. 6).  The

Government apparently also did not indicate to Judge Schwartz that Mr. Hobson refused to

consent to a waiver of the Speedy Trial clock during that conversation, as Mr. Hobson stated to

this Court during its October 6 Telephone Conference. [Docket Entry No. 58].  In this Court's

previous Opinion, dated October 17, 2011, this Court erroneously quoted from Exhibit H of

Defendant's Omnibus Motion as well as Exhibit 6, p. 7 of the Government's Opposition to

Defendant's Omnibus Motion.  Those Exhibits omitted the handwritten additions made by

Magistrate Judge Schwartz to Paragraph 4 of its findings, where the Court clearly indicated that

it had considered the appointment of counsel in her "ends-of-justice" determination.   In fact, the

Order thus filed on the docket states:

> This matter having come before the Court on the application of Paul J. Fishman, United
> States Attorney for the District of New Jersey . . . for an order granting a continuance of
> the proceedings . . . for a period of 30 days to allow for the additional time necessary to
> transfer the defendant from the District of Ohio to the District of New Jersey . . .
> . . .
> It is the FINDING OF THIS COURT that this action should be continued for the
> following reasons:
> (1) The charges in this case are pending against a defendant who was arrested in the
>     Southern District of Ohio and taken into the custody of the U.S. Marshals on or about
>     December 2, 2010; subsequent to his initial appearance in that district on December
>     3, 2010, the defendant was ordered to be transferred to the District of New Jersey;
> (2) The defendant has not yet been transferred to the District of New Jersey and the U.S.
>     Marshals have advised that the defendant cannot be transported by air to this district
>     until the week of January 3, 2011 at the earliest;

14

    (3) As the defendant has not yet appeared in this district, no counsel has been appointed to represent the defendant, and no counsel has informed the Government of this Court that they have been retained to represent the defendant in connection with these proceedings;

    (4) In the absence of a continuance allowing the U.S. Marshals additional time to transport the defendant to the District of New Jersey, the 30-day deadline by which an information or indictment must be filed pursuant to 18 U.S.C. § 3161(b) may lapse prior to the defendant's arrival to the district, and **the continuance will provide defendant an opportunity to secure counsel and confer with counsel before the case is presented to the grand jury**; and

    (5) As a result of the foregoing, pursuant to Title 18, United States Code, Section 3161(h)(7), the ends of justice served by granting the continuance outweigh the best interest of the public and the defendant in a speedy trial.[1]

(Id.) (emphasis added).  The Order states as bases for granting the continuance allowing additional time for Defendant's transport to this District as well as allowing the Defendant the opportunity to secure and confer with counsel.  However, Defendant's whereabouts at the time the continuance was issued as well as representations by Defendant's former counsel, Gordon Hobson, to the Government denying his consent to a waiver of Defendant's Speedy Trial clock indicate that Magistrate Judge Schwartz was led to rely on erroneous information provided by the Government regarding the Defendant's whereabouts and the lack of consent by his former attorney to the granting of a continuance.[2]  The "ends of justice" finding was thus in part based on erroneous information that the Government did not investigate with appropriate due diligence.  Furthermore, in light of the alleged communications between Dennis Maitland and Magistrate Judge Schwartz's staff regarding the whereabouts of Defendant, and his purported arrival in Brooklyn, the factual findings regarding the Defendant's location in the substance of the Order

---

[1] The Continuance Order appears to be a proposed form of order prepared and submitted to Magistrate Judge Schwartz by the Government for her signature, upon which Judge Schwartz specifically made handwritten findings regarding providing the Defendant an opportunity to secure and confer with counsel.

[2] We also note Mr. Hobson's representations to this Court in the October 6, 2011 Telephone Conference that he did not recall whether or not he continued to be Defendant's attorney of record at the time he was called by the U.S. Attorney.

do not seem to be substantiated. As a result, this Court finds the Continuance Order invalid for the purposes of excluding the dates between January 6, 2011 and January 22, 2011.

While the dates covered in the December 23, 2011 Continuance Order are not excludable, Defendant's motion to hold a bond hearing was decided within the thirty-day period, so the days from January 6, 2011, the date the hearing was held, through January 7, 2011, the date the motion was decided, are excluded from Defendant's Speedy Trial clock under 18 U.S.C. § 3161(h)(1)(D). While this Court was closed on January 12, 2011 (inclement weather), January 16, 2011 (Martin Luther King, Jr. Holiday), and January 27, 2011 (inclement weather) the Supreme Court has confirmed that, for the purposes of computing time, weekend days and holidays are not to be excluded from the requisite thirty-day period, at least for the purposes of the § 3161(h)(1)(F) transport exclusion. Although 18 U.S.C. § 3161(h) does not incorporate Federal Rule of Criminal Procedure 45, the Court notes the rule's instruction that weekend days and holidays are to be counted when calculating all time periods, including statutory time periods for which no alternative method of computing time is specified. See United States v. Tinkelberg, 131 S. Ct. 2007, 2017 (2011); Fed. R. Crim. P. 45. Further, the exceptions in 18 U.S.C. § 3161(h) are exclusive, so no exclusions based on inclement weather are permissible from the thirty-day requirement unless a valid continuance is granted on the grounds that inclement weather would make proceedings impossible. See United States v. Carrasquillo, 667 F.2d 382, 388 (3d Cir. 1981); United States v. Paschall, 988 F.2d 972 (9th Cir. 1993)(the "ends-of-justice" clause can be invoked by courts to exclude delays caused by a major snowstorm that impaired the government's ability to prepare for trial). The Government thus exceeded the statutory requirements by two days with respect to the May 10, 2010 charge. For this reason, Count One

of the Superseding Indictment, the May 10, 2010 charge, must be dismissed from the
Superseding Indictment.

### 2) Applicability of the "Gilding Exception"

Defendant cites to United States v. Brown to support his argument that a "gilded" charge
exists where a subsequent accusatory instrument merely "gilds" the initial charge filed against an
individual, and the different accusatorial dates between events are mere ornamentation.  335 F.
Supp. 2d 146 (D. Me. 2004).  Defendant insists that both indictments allege the same charge of
unlawful distribution with the only difference being "gilded" material added prior to law
enforcement involvement that gave additional details as to the same charge alleged in the first
complaint.  Further, Defendant states that the Government had sufficient information to include
offenses that occurred prior to October 4, 2010 at the time of filing the complaint, but only
included those offenses later to protect themselves from a Speedy Trial Act violation and
indictment dismissal.   The Government, however, argues that the Grand Jury's return of the
Indictment and Superseding Indictment effectively constituted a dismissal of the original and
superseding criminal complaints, and that the Superseding Indictment does not contain the
distribution charge included in the original criminal complaint.  Since the charge in the
Indictment is not the same charge as that in the original complaint, and since the date of the
charged offenses is a different element that the Government must prove, the charges in the
Superseding Indictment are different offenses, making the "gilding" exception inapplicable.

In the case cited by Defendant, United States v. Brown, the District Court of Maine was
asked to find that a superseding indictment merely "gilded" the original indictment when it
varied from the original indictment by adding sentencing allegations that, if found by a jury

beyond a reasonable doubt, would support Guideline sentencing enhancements. Id. at 147. The court found that the superseding indictment did not fit the gilding definition "because the different accusatorial dates here are 'reasonably explicable'" due to an intervening Supreme Court decision and the district court's application of that decision to the sentencing guidelines. Id. at 148-49. Brown thus does not serve as a strong example of why a variance of accusatorial dates can be viewed as "mere ornamentation" since, on the contrary, it finds the different accusatorial dates between the two charges made against defendant "reasonably explicable." Clearly, a prosecutor has the discretion to charge a defendant with only those charges about which he or she has secured sufficient evidence to convince a jury beyond a reasonable doubt that a given defendant is culpable. "Judicial intrusion into executive discretion of such high order [as the decision to prosecute] should be minimal." Miller v. Mitchell, 598 F.3d 139 (3d Cir. 2010), citing Hartman v. Moore, 547 U.S. 250, 263 (2006).

Neither the Superseding Complaint nor its accompanying affidavit mention any alleged acts by Defendant on the five dates listed in the Superseding Indictment: May 14, 2010, June 9, 2010, June 16, 2010, June 25, 2010, and June 29, 2010. The circumstances surrounding any alleged distributions known to the Government following May 10, 2010 are entirely absent from the Superseding Complaint. These distinct dates on which unlawful distributions are charged in the Superseding Indictment allege different substantive offenses, each of which the Government must show, beyond a reasonable doubt, as involving distinct acts of unlawful distribution. Therefore, Counts Two through Six in the Superseding Indictment do not merely gild Count One, and they are not subject to dismissal under the Speedy Trial Act.

B. Dismissal of Count One of the Superseding Indictment With or Without Prejudice

The remedy for a Speedy Trial Act violation is dismissal of the charge in the complaint under 18 U.S.C. § 3162(a). That provision places within the discretion of the court whether said dismissal should be granted with or without prejudice, listing the following factors for the court to consider: "the seriousness of the offense; the facts and circumstances of the case which led to dismissal; and the impact of a reprosecution on the administration of this chapter [18 U.S.C. §§ 1361 et seq.] and on the administration of justice." 18 U.S.C. § 3161(a)(1). Prejudice to the defendant should also be considered before barring reprosecution, but it is not dispositive. United States v. Taylor, 487 U.S. 326, 334 (1988). "Congress did not intend any particular type of dismissal to serve as the presumptive remedy for a Speedy Trial Act violation." Id. The Supreme Court has further clarified that analysis of factors to determine whether or not to dismiss with or without prejudice is "designed to promote compliance with the [Speedy Trial] Act without needlessly subverting important criminal prosecutions." Zedner, 547 U.S. at 498 (2006). After weighing the relevant factors, this Court finds that the May 10, 2010 unlawful distribution of child pornography charged against Defendant is dismissed without prejudice.

### 1) Seriousness of the Charge

While Defendant argued in his Brief in Support of his Omnibus Motion that the one count of unlawful distribution of child pornography in the original Indictment was not serious, Defendant's counsel conceded the seriousness of the charge in oral argument before this Court. (September 26, 2011 Motion Hearing, Docket Entry No. 55, Tr. 38: 4-6). Each count in violation of 18 U.S.C. § 2252A(a)(2)(A) carries a statutory minimum sentence of five years in prison and a statutory maximum sentence of up to twenty years in prison for a convicted individual with no prior convictions. 18 U.S.C. § 2252A(b)(1). Distributors of child pornography receive direct financial benefits from the sexual exploitation of children and further

encourage both the production and consumption of materials based on such exploitation. Further, distributing child pornography affects its victims directly as the continued existence of the materials "causes the child victims continuing harm by haunting the children for years to come." <u>Osborne v. Ohio</u>, 495 U.S. 103, 111 (1990), <u>citing</u> <u>New York v. Ferber</u>, 458 U.S. 747, 759 (1982). "The distribution network for child pornography must be closed if the production of material which requires the sexual exploitation of children is to be effectively controlled. . . . While the production of pornographic materials is a low-profile, clandestine industry, the need to market the resulting products requires a visible apparatus of distribution. The most expeditious if not the only practical method of law enforcement may be to dry up the market for this material by imposing severe criminal penalties for persons selling, advertising, or otherwise promoting the product." <u>New York v. Ferber</u>, 458 U.S. at 759-60. This Court thus finds a violation of 18 U.S.C. 2252A(a)(2)(A) to be a serious offense weighing in favor of dismissal without prejudice.

### 2) Facts and Circumstances Which Led to Dismissal

Defendant argues that the reason for the delay rests solely with the Government and not Defendant, and the Government conceded this. (September 26, 2011 Motion Hearing, Docket Entry No. 55, Tr. 47: 15-16). Though the validity of the December 23, 2010 Continuance Order is not relevant for the purposes of computing time under the Speedy Trial Act for Count One of the Indictment, this Court notes the significant negligence of the Government in ordering the Defendant detained and failing to monitor his whereabouts for close to three weeks in December 2010. In Deputy Marshal Sanseverino's Affidavit, he confirmed that the Assistant U.S. Attorney knew after December 23, 2010 that "Defendant may have been moved to Brooklyn." ("Sanseverino Affidavit," ¶ 14). The Court also notes the diligent efforts on the part of

Defendant's family to communicate with Government agents and inform court officials in the District of New Jersey regarding the Defendant's whereabouts.

However, the Court does not find, nor does Defendant claim, that the Government acted in bad faith. (September 26, 2011 Motion Hearing, Docket Entry No. 55, Tr. 38: 21).  The District of New Jersey has held that a "dismissal with prejudice should be reserved for cases in which there are regular and frequent indications of negligence, or evidence of an intent to delay with the purpose of gaining a strategic or tactical advantage." United States v. Arias-Ruiz, 2009 U.S. Dist. LEXIS 20727 (D.N.J., Mar. 16, 2009), at *6; citing United States v. Mancia-Perez, 331 F.3d 464, 467 (5th Cir. 2003); United States v. Cano-Silva, 402 F.3d 1031, 1035 (10th Cir. 2005).  Under Third Circuit law, sanction of dismissal without prejudice is appropriate where nothing is presented showing that the government's failure to timely file was a result of anything more than mere negligence. Government of the Virgin Islands v. Francis, 98 F.R.D. 626, 632 (3d Cir. 1983).

In this case, there is no evidence that, in not securing knowledge of Defendant's whereabouts, the AUSA was attempting to gain a strategic or tactical advantage.  First, the AUSA was explicitly told on December 23, 2010 by the USMS that Defendant would be arriving in Newark only after the first of the year. ("Sanseverino Affidavit," ¶ 12).  Additionally, upon further inquiry by the USMS into the circumstances surrounding Defendant's transfer, the Newark USMS determined that it never received a copy of the itinerary generated by the Justice Prisoner Alien Transportation System ("JPATS") regarding Defendant's transport from Philadelphia to Brooklyn. (Id., ¶ 16).  While this still demonstrates fault and even negligence on the part of the Government, it suggests lack of intent to delay on the part of the AUSA for their own advantage.  The Government also attempted to contact Defendant's initial attorney, Gordon

Hobson, and informed Magistrate Judge Schwartz of the need to schedule an initial appearance for Defendant upon his arrival in the District. Further, in the Continuance Order issued by Magistrate Judge Schwartz, an explicit order is made "that the United States shall request an initial appearance for the defendant upon his arrival in this District." Finally, the length of the delay with respect to this specific Speedy Trial Act violation—exceeding the thirty-day requirement by two days—is minimal, and the length of delay must be considered as one of the circumstances surrounding the dismissal of a case. United States v. Miller, 23 F.3d at 197-98. For these reasons, while the facts and circumstances surrounding the delay are not propitious for the Government, they more strongly support inadvertence and negligence than bad faith and malicious intent.

### 3) Impact of Reprosecution on the Administration of the Speedy Trial Act and the Administration of Justice

Defendant argues that administration of justice warrants dismissal with prejudice, focusing on the prejudice to Defendant in being held for over a month pending his first appearance in New Jersey. This hampered his ability to defend and prepare his case as he had no access to counsel and was only able to communicate through his family. Defendant claims he was further prejudiced by the Government's ex parte application for a continuance. The Government argues that reprosecution weighs in favor of dismissal with prejudice due to the public interest involved in combating criminal distribution of child pornography and the efficiency with which it believes it can conduct a speedy trial on the counts charged. Finally, the Government asserts that Defendant has not suffered prejudice. It presents two factors which weigh in favor of finding a lack of prejudice: 1) whether the delay prejudiced the defendant's trial preparation due to the loss of evidence or fading of witness memories, see, e.g., United States v. Abdush-Shakur, 465 F.3d 458, 464 (6th Cir. 2006); and 2) whether there have been

additional restrictions on the defendant's liberty as a result of the Speedy Trial Act violation. Taylor, 487 U.S. at 341. Since Defendant doesn't claim any harm to evidence or witness unavailability resulting from the delay, the Government argues that Defendant was not significantly prejudiced. While Defendant's detention was prejudicial, the physical restriction alone does not warrant dismissal with prejudice. United States v. Etwaroo, 2008 U.S. Dist. LEXIS 105208, at *3 (E.D.N.Y., Dec. 31, 2008)("although 28 days is not an insubstantial period of time, courts have generally reserved dismissal with prejudice for more egregious delays").

This Court agrees with the Government that the limited delay did not lead to prejudice against the Defendant with respect to preparation for trial or loss of evidence that hindered his ability to lodge a defense to the crimes charged. The Court also agrees that the limited extent of the delay favors dismissal without prejudice. See United States v. Saltzman, 984 F.2d 1087, 1094 (10th Cir. 2002)(holding that a near seven-month delay, by itself, is insufficient to compel dismissal with prejudice). Defendant was certainly prejudiced during his detention of over one month between December 2, 2010 and January 7, 2011, the date of his release on bail. However, Defendant's demonstrated disregard for the conditions of his release on bail, and the circumstances surrounding his bail revocation present legitimate public interest concerns. These concerns outweigh the prejudicial effects on Defendant of his detention after his bail revocation on April 15, 2011.

Having balanced the relevant factors in determining whether dismissal with or without prejudice is appropriate, this Court finds that the seriousness of the distribution charge, the lack of bad faith and malicious intent on the part of the Government, and the impact of reprosecution on the administration of justice favor dismissal of the May 10, 2010 charge of unlawful distribution of child pornography without prejudice.

## 2. Validity and Constitutionality of Arrest Warrant

Defendant moves to dismiss based on a violation of the U.S. Constitution's Fourth Amendment requirement that an issued arrest warrant "particularly describ[e] . . . the persons or things to be seized." U.S. Const. Amend. IV. Federal Rule of Criminal Procedure 4(c)(1) provides that a warrant "shall contain the name of the defendant or, if his name is unknown, any name or description by which he can be described with reasonable certainty." The Defendant does not specify exactly what remedy he seeks for the alleged invalid warrant, but since: 1) this Court does not find the arrest warrant to be defective; and 2) the challenged arrest warrant has been rendered moot as it pertained to the October 4, 2010 charge for which Defendant is no longer charged, this Court declines to either vacate the original and amended arrest warrants of December 2010 or to suppress any evidence seized from defendant or his home on the date of the arrest.

For an arrest warrant to be valid, Federal Rule of Criminal Procedure 4 provides that it must:

> (A) contain the defendant's name or, if it is unknown, a name or description by which the defendant can be identified with reasonable certainty;
> (B) describe the offense charged in the complaint;
> (C) command that the defendant be arrested and brought without unnecessary delay before a magistrate judge, before a state or judicial officer; and
> (D) be signed by a judge.

Fed. R. Crim. P. 4(b)(1). Defendant only contests the validity of the arrest warrant as to Fed. R. Crim P. 4(b)(1)(A) since the original arrest warrant named "Richard Rowley" as the individual to be arrested rather than "Andrew Cox." Yet, because the Court finds the mistaken name on the face of the warrant to be a technical error, that the body of the warrant described Defendant with "reasonably certainty," and that the arresting officers were certain of Defendant's identity based

on personal experience in the case and the issuance of a "Search Warrant Operation Plan" in advance of the arrest, it does not find the arrest warrant invalid.

Under Third Circuit law, a "mere technical error does not automatically invalidate the warrant." United States v. Carter, 756 F.2d 310 (3d Cir. 1985)(holding that inaccuracy in the date of the offense in a criminal complaint is not a material or critical variance). The key inquiry is "whether there has been such a variance as to 'affect the substantial rights' of the accused." Id. at 313, quoting Cromer v. United States, 142 F.2d 697 (D.C. Cir. 1944). Such affects would occur if: 1) the accused is not informed as to the charges against him so as to enable him to present his defense and not be taken by surprise by the evidence offered at trial; and 2) the accused is not protected against another prosecution for the same offense. Cromer, 142 F.2d at 698. When a defendant alleges warrant invalidity, he must prove that "the misstatement was made intentionally or with reckless disregard for the truth." Carter, 756 F.2d at 313; see Franks v. Delaware, 438 U.S. 154 (1978).

Defendant does not contest that he was made aware of the charges against him, and has not demonstrated how the error on the face of the warrant affected his substantial rights in any way. The face of the warrant also contained a caption stating "United States v. Andrew Cox," thus clearly indicating that he was the defendant charged with the child pornography distribution. In addition, the body of the warrant stated his correct name, correct address, date of birth, social security number and sex, identifying him with "reasonable certainty." Defendant also fails to show any intentional misstatement or reckless disregard as required, particularly in light of the Government's amendment of the arrest warrant to substitute "Andrew Cox" for "Richard Rowley" before his arrest on December 2, 2010. Finally, Brian Wittig, the lead U.S. Postal Inspector of the investigation, was certain of Defendant's identity and was present at Defendant's

residence to execute the arrest warrant along with other postal inspectors who had received a detailed Search Warrant Operation Plan identifying Andrew Cox as the "target" and "suspect," and containing his photograph, date of birth, and estimated height and weight. Since there is abundant evidence of Defendant's identity in the body of the arrest warrant and the arresting officers could identify the Defendant with "reasonable certainty," this Court finds the arrest warrant valid under the Fourth Amendment.


### 3. Validity of Search Warrant

Defendant argues that the search warrant issued to search his home lacked probable cause with respect to items searched and seized in his home since no justification was given that Defendant mentioned child pornography in his e-mails to the CW or had used any items found at his home during any alleged distribution of child pornography. Defendant makes a separate claim that the search warrant lacked probable cause and/or was "stale" because the arresting offense was based on activity that took place in October, 2010, and the materials seized were for materials sent between May and June. The Magistrate Judge did not have a "substantial basis" for determining that probable cause existed for a continuing enterprise or prior distributions since the age of the information supporting the warrant application was recent, and the materials seized exceeded the scope of what a "substantial basis" determination could afford. Defendant argues the good faith exception does not apply since the officer's did not rely on the issued warrant in good faith. Finally, he claims that requests were made for a copy of the search warrant, but the warrant was not produced to anyone at the apartment during the arrest, and that some of the items seized were not listed in the evidence list and were outside the scope of the search warrant.

He thus moves to suppress all evidence and material seized from his home as "fruit of the poisonous tree."

The Government argues that the standard of reviewing a search warrant issued by a magistrate judge is very high under <u>Illinois v. Gates</u>, requiring the reviewing court to assess the sufficiency of the search warrant affidavit with "great deference" to the initial probable cause determination made by the judge. 462 U.S. 213, 236-38 (1983). A reviewing court must uphold the warrant as long as the issuing judge had a "substantial basis" for concluding by "a fair probability" that contraband or evidence of a crime would be found at a defendant's residence, <u>United States v. Conley</u>, 4 F.3d 1200, 1205 & n.2 (3d Cir. 1993), and they argue that Magistrate Judge Deavers did have that basis under the substantive and detailed allegations in the supporting affidavit. In the alternative, the Government claims, the fruits of the search warrant are admissible due to the agent's good faith reliance on the Magistrate Judge's finding of probable cause.

Under the Fourth Amendment of the U. S. Constitution, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "[O]nly the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." <u>Gates</u>, 462 U.S. at 235. In its probable cause determination, a court must consider the totality of the circumstances, first determining the relevant information within the affidavit, and then evaluating the credibility and reliability of that information. See <u>Gates</u>, 462 U.S. at 236-40; <u>United States v. Williams</u>, 3 F.3d 69, 72 (3d Cir. 1993); <u>Conley</u> 4 F.3d at 1206. If reasonable inferences can be drawn from the credible

information provided in the affidavit so as to support a conclusion that there exists a fair

probability that contraband or evidence of a crime will be found at the designated location, the

court should defer to the Magistrate Judge's finding of probable cause. See Gates, 462 U.S. at

238.

 In this case, the Magistrate Judge had a "substantial basis" for concluding by "a fair

probability" that contraband or evidence of unlawful distribution of child pornography would be

found at Defendant's residence.  The Search Warrant Affidavit states that, aside from the

October 2010 distribution, the CW had previously "purchased nudism form an individual online

with address "T'N'S Inc., P.O. Box 261071, Columbus, OH 43226," and had been sent a

"catalog via e-mail containing a list of videos Andrew had for sale." (Def.'s Omnibus Mot. Br.,

Ex. N, "Search Warrant and Affidavit").  The Postal Inspector directly participated in the

October 2010 controlled purchase of DVDs containing child pornography through the CW, and

the Affidavit details the circumstances and excerpts some of the communications that resulted in

that distribution, linking Defendant with the e-mail address and physical address from which the

distribution was made.  Further, based on the expertise of the Postal Inspector's law enforcement

background investigating unlawful distribution of child pornography, he states in his affidavit:

> Based upon the conduct of individuals involved in the collection of child pornography set
> forth [above] . . . namely, that they tend to maintain their collections at a secure, private
> location for long periods of time, and that forensic evidence of the downloading, saving,
> and storage of such evidence may remain on the computers or digital media for months or
> even years even after such images and videos have been deleted from the computers or
> digital media, there is probable cause to believe that evidence of the offenses of receiving
> and possessing child pornography is currently located at the SUBJECT PREMISES
> [Cox's residence].

(Id., ¶ 38).  Finally, the alleged facts demonstrate the internet activity associated with

distribution-related e-mail correspondence and PayPal activity traced back to Defendant's

residence (Id., ¶¶ 31-34).  Given the amount of detailed information linking the charged

distribution with both Defendant and his residence, this Court finds that the Magistrate Judge based her issuance of the search warrant on sufficient probable cause based on credible information and inferences supporting the existence of a fair probability that contraband or evidence of distribution of child pornography would be present in Defendant's residence. Therefore, this Court finds no Fourth Amendment violation to warrant suppression of evidence seized at Defendant's residence and need not consider whether the arresting agent's good faith reliance on the Magistrate Judge's finding of probable cause made proper the seizure of said evidence.

## 4. Proper Venue

Defendant claims that, since the alleged substantive offense occurred entirely in Ohio, there is a lack of venue in the District of New Jersey and the counts in the Superseding Indictment should be dismissed.  However, this Court finds that venue in the District of New Jersey is proper and denies Defendant's motion to dismiss for lack of venue.

Under Federal Rule of Criminal Procedure 18, venue lies "in a district where the offense is committed.  Fed. R. Crim. P. 18.  Under federal statute, proper venue exists as follows:

> Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

> Any offense involving the use of the mails, transportation in interstate or foreign commerce, or the importation of an object or person into the United States is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce, mail matter, or imported object or person moves.

18 U.S.C. § 3237(a).  The statute prohibiting the distribution of child pornography, 18 U.S.C. § 2252A(a)(2)(A), does not expressly provide a separate provision to determine venue, so section

3237(a) applies to Defendant's charged offenses.  Proper venue thus rests not only in Ohio for Defendant's alleged distributions, but to any district through or to which his distributions were directed.  While the original complaint misrepresented the fact that the package allegedly sent by Defendant reached a P.O. Box in New Jersey when it had been sent to Pennsylvania, the Superseding Indictment, the governing charging document before this Court, charges Defendant only with distributions purchased by a New Jersey resident and mailed to his New Jersey address.  Since the charged offenses were continued through and completed in New Jersey, venue is proper in this district.

**5. Introduction of Government Evidence under Federal Rules of Evidence 803(6) and 902(11)**

Finally, Defendant argues that any business records and the packages recovered by the Government in its controlled purchase of DVDs containing child pornography be barred under Federal Rules of Evidence 803(6) and 902(11) due to their having been altered during the course of the investigation, were not handled by all parties in the regular course of business, or were not accompanied by the appropriate certification from the custodian of records.  Since the trial of this matter has not yet commenced, the Court finds this motion premature.  Defendant's motion to exclude business records and the packages recovered will thus be denied without prejudice to the raising of appropriate objections regarding admissibility of documents at trial.

**IV.  CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendant's motion to dismiss Count One of the Superseding Indictment **WITHOUT PREJUDICE** for the Government's violation of the Speedy Trial Act.  Defendant's motion to dismiss Counts Two, Three, Four, Five and Six in

the Superseding Indictment is **DENIED**.   The Court also **DENIES** Defendant's motion to dismiss based on an invalid and unconstitutional arrest warrant.  Defendant's motion to suppress search and seizure of items found pursuant to the court-issued search warrant is also **DENIED**. Since this Court finds proper venue exists in the District of New Jersey, Defendant's motion to dismiss for lack of venue is also **DENIED**.  Defendant's motion to bar the introduction of evidence under Federal Rules of Evidence 803(6) and 902(11) is **DENIED** without prejudice to the raising of appropriate objections to the admissibility of specific documents at trial.  An appropriate order accompanies this opinion.


DATED: October  18, 2011                      /s/ Jose L. Linares_____
                                              United States District Judge